UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

DWAYNE MORRISON,

          Petitioner,
                              **MEMORANDUM & ORDER**
                                 11-CV-3366 (KAM)

    -against-

WILLIAM D. BROWN, Superintendent,
Eastern Correctional Facility,

          Respondent.

-------------------------------------X

**MATSUMOTO, United States District Judge:**

        Petitioner Dwayne Morrison ("petitioner"), proceeding *pro se*, brought the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York, challenging his conviction for Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree in the Supreme Court of New York, Queens County (the "trial court"). (*See* Petition for Writ of Habeas Corpus ("Pet." or the "petition"), ECF No. 1, at 1; *see also generally* Affidavit and Memorandum of Law in Opposition to Petition ("Opp." or the "opposition"), ECF No. 21.) For the reasons set forth below, the petition is denied in its entirety.

**BACKGROUND**

## I. Criminal Charges

On the evening of July 30, 2005, in Queens, New York, Miguel Angel Restituyo was stabbed, and subsequently died as a result of his injuries. (Opp. at 2; Jury Selection Tr., ECF No. 23, ECF p. 12, at 12:1-25.)[1] In connection with Mr. Restituyo's death, petitioner was indicted on charges of Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree by a grand jury in Queens County, New York. (*Id.*)

## II. Trial, Verdict, and Sentence

Petitioner proceeded to trial by jury, and jury selection took place on May 9 and 10, 2007. (*See generally* Jury Selection Tr., ECF No. 23, ECF pp. 9-212 and ECF No. 23-1, ECF pp. 1-19.) At trial, the jury found petitioner guilty of Murder in the Second Degree, in violation of New York Penal Law section 125.25, and Criminal Possession of a Weapon in the Fourth Degree, in violation of New York Penal Law section 265.01. (Trial Tr., ECF No. 23-5, ECF pp. 71-75, at 968:3-972:7; *see also* Opp. at 2.) On July 10, 2007, the trial court sentenced petitioner to an indeterminate term of seventeen years' to life imprisonment with respect to the second degree murder

---

[1]     The state court record is not Bates-stamped with consecutive pagination and is spread across several ECF entries. (*See* State Court Record, ECF Nos. 23 and 23-1 through 23-8.) Consequently, in citations to the state court record, this Memorandum and Order refers to the ECF entry in which the cited portion is located, the ECF pagination, and relevant internal pagination.

conviction, and a concurrent one-year term with respect to the criminal possession of a weapon conviction. (Sentencing Tr., ECF No. 23-5, ECF pp. 82-101, at 18:16-19:2.)

III.  **Petitioner's Direct State Court Appeal**

Through appellate counsel, petitioner appealed his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department (the "Appellate Division").  In his brief, dated May 28, 2008, petitioner raised numerous claims, set forth in seventeen "questions presented" for review.  (*See* Petitioner's Direct Appeal Brief ("Pet. App. Br."), ECF No. 23-6, ECF pp. 1-48, at ii-iv.)  As relevant here, petitioner's claims on appeal included claims that: (1) the prosecutor's remarks during his opening were improper, inflammatory, and the trial court committed reversible error in allowing them; (2) the prosecutor changed the theory of the indictment and bill of particulars, which prejudiced petitioner and prevented him from preparing for trial properly; (3) the prosecutor's opening unduly prejudiced petitioner by commenting on inadmissible and inflammatory evidence; (4) the introduction of a photograph of the victim smiling prejudiced the defendant; (5) the prosecutor's summation included commentary on inadmissible evidence, and allowing it constituted reversible error; (6) the prosecutor made personal attacks on defense counsel's credibility, requiring reversal; (7) the prosecutor shifted the

3

burden of proof and made improper suggestions that tainted the
jury despite the court's curative instructions; (8) the
prosecutor presented an improper example in summation, which
misled and/or mischaracterized the evidence and prejudiced
petitioner; (9) the prosecutor's summation unfairly and
improperly suggested that petitioner had prepared to attack the
victim, and thereby denied petitioner a fair trial; (10) the
prosecutor unfairly vouched for witnesses; (11) the prosecutor
"planted improper seeds" during his opening and engaged in
commentary outside of the evidence; (12) the prosecutor exceeded
the bounds of fair commentary by suggesting that the petitioner
sustained no injuries in the altercation that resulted in the
victim's death; (13) the prosecutor made a biblical reference
that denied petitioner a fair trial; (14) trial counsel was
ineffective for failure "to implement a viable and real
defense;" (15) petitioner's trial counsel failed to present any
evidence on his behalf, thereby depriving petitioner of a fair
trial; and (16) petitioner's counsel failed to object to the
prosecutor's comments on inadmissible evidence on a material
issue, thereby depriving petitioner of a fair trial.  (*See id.*)

          The People filed an opposition memorandum on August 4,
2008, in which they argued that none of petitioner's claims were
valid.  (*See* People's Direct Appeal Response, ECF No. 23-6, ECF
pp. 49-104, at 1-4.)  According to the People's brief, fifteen

of the seventeen claims raised by petitioner, including all claims relating to the prosecution's opening and ten of the fifteen claims relating to the prosecution's closing, were not preserved for appellate review, and the remaining claims were meritless. (*Id.* at 1-4, 20-23.) Petitioner, again through counsel, filed a reply brief on August 11, 2008.

On February 10, 2009, a unanimous panel of the Appellate Division affirmed petitioner's conviction. *See generally People v. Morrison*, 873 N.Y.S.2d 159 (N.Y. App. Div. 2009). As relevant to petitioner's habeas corpus claims, the Appellate Division concluded that petitioner's "claims that he was denied a fair trial because the prosecutor made improper remarks during his opening statement and summation are unpreserved for appellate review, except [petitioner's] claim that the prosecutor shifted the burden of proof during summation. With respect to that preserved issue, the court clearly and correctly instructed the jury that the burden of proof remained with the People and did not shift to the defendant." *Id.* at 160 (citations omitted). The Appellate Division added that "[i]n any event, the challenged remarks either were fair comment on the evidence, permissible rhetorical comment, or responsive to defense counsel's summation." *Id.* (citations omitted).

On April 9, 2009, petitioner, again through counsel, sought leave to appeal the Appellate Division's decision to the Court of Appeals of New York. (*See* Letter Requesting Leave to Appeal, ECF No. 23-6, ECF pp. 130-31.)[2] Petitioner also submitted a *pro se* letter in support of his application for leave to appeal. (*See* Letter to Court of Appeals, ECF No. 23-6, ECF pp. 132-34.) The People filed a letter opposing petitioner's application. (*See* Letter to Court of Appeals, ECF No. 23-6, ECF p. 135, and ECF No. 23-7, ECF pp. 1-2.) On June 5, 2009, the Court of Appeals denied petitioner's request for leave to appeal. *People v. Morrison*, 912 N.E.2d 1080 (N.Y. 2009).

## IV.  Petitioner's Section 440 Motion

On August 23, 2010, petitioner, proceeding *pro se*, filed a motion to vacate his judgment of conviction pursuant to section 440.10 of the New York Criminal Procedure Law ("section 440") in the Supreme Court of New York, Queens County. (*See* Section 440 Motion, ECF No. 23-7, ECF pp. 5-6.) In support of his section 440 motion, petitioner filed an affidavit and numerous exhibits, consisting primarily of transcripts of proceedings before the trial court. (*See* Affidavit in Support

---

[2]     Before counsel submitted a formal request for leave to appeal, petitioner sent the Court of Appeals a *pro se* request for an extension of time to seek leave to appeal (*see* March 3, 2009 Letter from Petitioner, ECF No. 23-6, ECF pp. 128-29), which the Court of Appeals granted. (*See* March 19, 2009 Letter from Clerk of Court, ECF No. 23-6, ECF p. 127.)

of Section 440 Motion ("Section 440 Aff."), ECF No. 23-7, ECF pp. 7-35; Exhibits in Support of Section 440 Motion, ECF No. 23-7, ECF pp. 36-123.) Petitioner's section 440 motion sought relief on numerous grounds and, as relevant here, raised previously unasserted claims that petitioner's rights under the confrontation clause of the Sixth Amendment to the United States Constitution and under *People v. Antommarchi*, 604 N.E.2d 95 (N.Y. 1992), had been violated. (*See* Section 440 Aff. at 7-9, 11-13.) Petitioner also raised ineffective assistance of counsel claims on different grounds than those he raised in his direct appeal. (*Id.* at 25-29.)

The People filed their opposition to the section 440 motion on September 24, 2010 (*see* Affidavit in Opposition to Section 440 Motion, ECF No. 23-7, ECF pp. 124-39), and petitioner filed an undated reply. (*See* Reply in Support of Section 440 Motion, ECF No. 23-7, ECF pp. 140-42.) On October 21, 2010, the New York Supreme Court, Queens County, denied petitioner's section 440 motion in an order (ECF No. 23-7, ECF p. 143) and accompanying memorandum opinion. (Memorandum Denying Section 440 Motion ("440 Denial"), ECF No. 23-7, ECF pp. 144-153.) The memorandum opinion concluded, in relevant part, that petitioner's confrontation clause and *Antommarchi* claims, and a portion of his ineffective assistance of counsel claim, were procedurally barred, as petitioner had not raised them on

direct appeal and had provided no justification for this

failure.  (440 Denial at 6-7.)

Petitioner subsequently sought, and on July 6, 2011,

was denied, leave to appeal the denial of his section 440 motion

to the Appellate Division.  (*See, e.g.*, Notice of Motion for

Leave to Appeal, ECF No. 23-7, ECF p. 155; Order Denying Leave

to Appeal, ECF No. 23-8, ECF p. 17.)  The instant petition for

relief pursuant to 28 U.S.C. § 2254 followed.

**STANDARD OF REVIEW**

**I.   Deferential Standard of Review**

A writ of habeas corpus filed by an individual in

state custody is governed by, *inter alia*, the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  Section 2254 of

AEDPA provides that a district court shall issue a writ of

habeas corpus for an individual in state custody "only on the

ground that he is in custody in violation of the Constitution or

law or treaties of the United States."  28 U.S.C. § 2254(a).

Section 2244 provides that a one-year statute of limitations

applies to "an application for a writ of habeas corpus by a

person in custody pursuant to the judgment of a State court."

28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

A district court may grant a writ of habeas corpus for

claims that were adjudicated on the merits in state court and

the adjudication produced a decision that was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (brackets in original) (citing 28 U.S.C. § 2254(d)(1)); *see also Reznikov v. David*, Nos. 05-CV-1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742, at *3 (E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits adjudication requires only that (a) a federal claim be raised, and (b) that it be disposed of on substantive, rather than procedural grounds."). "When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan*, 261 F.3d at 312.

Clearly established federal law is limited to the jurisprudence of the Supreme Court at the time of the relevant state court decision. *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005). The "contrary to" and "unreasonable application" clauses are analyzed independently. *Stultz v. Artus*, No. 04-CV-3170 (RRM), 2013 WL 937830, at *5 (E.D.N.Y. Mar. 8, 2013). A

state court's decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority in this part). An unreasonable application of law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively, and requires "a 'higher threshold' than 'incorrect.'" *Stultz*, 2013 WL 937830, at *5 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's application must have "[s]ome increment of incorrectness beyond error . . . . [H]owever, . . . the increment need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines a state court's application of law was unreasonable, "it must next consider whether such error was harmless." *Stultz*, 2013 WL 937830, at *5 (citations and internal quotations omitted).

A district court "may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the

state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (citations and internal quotation marks omitted). A federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

Apart from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court determinations of facts are presumed correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.  Exhaustion Requirement

A district court shall not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a prisoner must

have "fairly presented to an appropriate state court the same
federal constitutional claim that he now urges upon the federal
courts," *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)
(citation and internal quotation marks omitted), either in the
form of "explicit constitutional arguments" or by "alleging
facts that fall 'well within the mainstream of constitutional
litigation,'" *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 124
(2d Cir. 1995).  Fair presentation includes presentation for
discretionary review in the state's highest appellate court.
*See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999);
*Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

If a petitioner includes both exhausted and
unexhausted claims in his petition, a district court may allow
the petitioner to return to state court to exhaust his claims,
amend and resubmit the petition to include only exhausted
claims, or deny the petition on the merits.  *See McKethan v.
Mantello*, 292 F.3d 119, 122 (2d Cir. 2002); 28 U.S.C. §
2254(b)(2).  "[P]lainly meritless" claims should be denied on
the merits rather than for failure to exhaust.  *Rhines v. Weber*,
544 U.S. 269, 277 (2005).  In limited circumstances, the
district court may stay a mixed petition until the claims have
been properly presented to the state court.  *Id.* at 277-78.

## III.  **Procedural Bar**

Pursuant to the adequate and independent state ground doctrine, federal habeas review is precluded if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar.  *Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).  Further, "[e]ven where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default," so long as the state-law procedural default is "adequate to support the judgment."  *Murden v. Artuz,* 497 F.3d 178, 191 (2d Cir. 2007) (citations omitted); *accord Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." (emphasis in quoted material) (citation omitted)).

A petitioner may overcome the procedural bar by demonstrating either "cause for the default and actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*,

501 U.S. 722, 750 (1991).  Establishing cause for default sufficient to overcome the procedural bar requires evidence of an objective factor, external to the defense, that explains why the claim was not previously raised, and prejudice can be inferred when the claim, if proven, would bear on the petitioner's guilt or punishment.  *See Banks v. Dretke*, 540 U.S. 478, 496 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  A fundamental miscarriage of justice requires a showing of actual innocence.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## IV.  Special Considerations for *Pro Se* Petitioners

In the instant action, petitioner is proceeding *pro se*.  A *pro se* petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted), and are construed "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).  "Nonetheless, a *pro se* [litigant] is not exempt from compliance with relevant rules of procedural and substantive law."  *Rivera v. United States*, No. 06-CV-5140 (SJF), 2006 WL 3337511, at *1 (E.D.N.Y. Oct. 4, 2006) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)).  Petitioner's papers are evaluated accordingly.

**DISCUSSION**

On July 11, 2011, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his conviction. (*See generally* Pet.) As discussed more fully below, the petition raises five claims for relief, and petitioner seeks improperly to raise two additional claims through his reply. (*Id.*; *see also generally* Petitioner's Reply Memorandum ("Repl."), ECF No. 27.) For the following reasons, the petition is denied in its entirety, and petitioner's additional claims asserted in his reply memorandum are also denied.

## I. Confrontation Clause Claim (Claim I)

Petitioner claims, as he did in his section 440 motion, that his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated when the court permitted a medical examiner to testify at trial regarding an autopsy that the witness did not personally perform. (Pet. at 5, 7; *see also* Section 440 Motion Aff., ECF No. 23-7, ECF pp. 7-35, at 7-9.)

### A. Legal Standard

"The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

witnesses against him.'"  *Melendez-Diaz v. Massachusetts*, 557
U.S. 305, 309 (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403
(1965), and quoting U.S. Const. amend. VI) (alterations in
quoted material).  Under the Sixth Amendment, "[a] witness's
testimony against a defendant is . . . inadmissible unless the
witness appears at trial or, if the witness is unavailable, the
defendant had a prior opportunity for cross-examination."  *Id.*
(citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

  B. Application

        Petitioner's confrontation clause claim fails, as it
is procedurally barred.  In denying petitioner's section 440
motion, the New York Supreme Court included petitioner's
confrontation clause claim in a list of claims the court
concluded was "mandatorily barred" because they were either "not
raised on appeal by [petitioner] and [petitioner] provide[d] no
reason for failing to raise th[em] on the record claim," or
because "they were already raised on appeal."  (440 Denial
Order, ECF No. 23-7, ECF pp. 144-53, at 6.)  A review of the
record makes clear that the confrontation clause claim falls in
the former category: petitioner did not raise it on direct
appeal or at trial.  (*See* Pet. App. Br., ECF No. 23-6, ECF pp.
1-48, at ii-iv (setting forth questions presented on direct
appeal).)[3]

---

[3]     Nor did petitioner object at trial to the introduction of the autopsy report

Thus, "because the last 'reasoned' opinion on petitioner's [confrontation clause] claim . . . held that the claim was procedurally barred, the state court's decision rests on a ground independent of the federal constitutional issue. *Walton v. Ricks*, No. 01-CV-5265(LMM), 2003 WL 1873607, at *11 (S.D.N.Y. Jan. 31, 2003). Moreover, the type of procedural default "at issue [here] is an 'adequate' state law ground for rejecting a claim. This is because the denial of a Section 440.10 motion for failure to raise a claim on direct appeal represents the application of a 'firmly established and regularly followed' New York rule." *Id.* at *12 (citing *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)). Accordingly, petitioner's confrontation clause claim is procedurally defaulted, and the court may only proceed to its merits if petitioner shows cause and prejudice, or shows actual innocence.

Even construed liberally, however, petitioner's submissions contain no explanation for his failure to raise his confrontation clause claim on direct appeal. (*See* Pet. at 5, 7; Repl. at 11-13.) Nor do petitioner's submissions articulate, beyond conclusory assertions, any basis to conclude that his inability to cross-examine the specific medical examiner who

---

via a medical examiner who did not prepare the report himself, although petitioner did object to certain exhibits that the prosecution sought to introduce through the medical examiner's testimony on grounds not at issue in the instant habeas petition. (*See* Trial Tr., ECF No. 23-4, ECF pp. 86-91, at 793:4-798:23.)

prepared the autopsy report, as opposed to a different medical examiner from the same office familiar with his office's practices and procedures, prejudiced petitioner. (*See id.*) Consequently, petitioner has shown neither cause nor prejudice with respect to his procedurally-defaulted confrontation clause claim. Additionally, petitioner has not made any showing of actual innocence. Accordingly, petitioner's confrontation clause claim must be denied.[4]

## II.   Changing Theory of Prosecution (Claim II)

Petitioner claims here, as he has since his direct appeal, that the prosecution materially changed the theory of the case "as the trial progressed." (Pet. at 5, 7; *see also* Pet. App. Br., ECF No. 23-6, ECF pp. 1-48, at 9 (arguing that petitioner was "blindsided" by the prosecution's theory, articulated in its opening statement, that petitioner "act[ed] in concert with another person").)

Depending on how this claim is construed, this claim is either procedurally barred, or unexhausted and meritless. To the extent petitioner seeks to attack the prosecution's articulation of its theory of the case in its opening, as plaintiff sought to do on his direct appeal (*see* Pet. App. Br.

---

[4]    Even if this court were to reach the merits of petitioner's confrontation clause claim, the federal law at the time of the relevant state court decisions in his case would preclude relief. The Court of Appeals denied petitioner leave to lodge a direct appeal of his conviction in early June 2009, approximately three weeks prior to the Supreme Court's decision in *Melendez-Diaz*, and well before its decision in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011).

at 9), the claim is procedurally barred.  The Appellate Division
concluded that, among petitioner's claims relating to the
propriety of the prosecution's opening and summation remarks,
only petitioner's burden shifting claim was preserved for
appellate review.  *Morrison*, 873 N.Y.S.2d at 569 (citation
omitted).

Petitioner's "changing theory of prosecution" claim is
also procedurally barred to the extent it is based on his
contention that "the prosecution changed the theory by deleting
from the indictment criminal possession of a weapon in the third
degree" and replacing it with criminal possession of a weapon in
the fourth degree.  (Repl. at 6.)  Petitioner raised this
precise formulation of his "changing theory of prosecution"
claim in his section 440 motion (*see* Section 440 Motion
Affidavit, ECF No. 23-7, ECF pp. 7-35, at 13-15), and the New
York Supreme Court concluded that it was procedurally barred for
petitioner's failure to raise it on his direct appeal.  (440
Denial, ECF No. 23-7, ECF pp. 144-53, at 6.)

Thus, the last reasoned state court decisions
addressing the foregoing formulations of petitioner's "changing
theory of the prosecution" claim rest on adequate and
independent state law grounds, and those formulations are
procedurally barred in the instant action.  Further, petitioner

has not attempted to establish, much less actually established, cause or prejudice for this procedural default.

To the extent petitioner's "changing theory of the prosecution" claim is construed more broadly, as seeking to attack some other aspect of the state court judgment of conviction, the claim is unexhausted and meritless. It is unexhausted because the record contains no indication that petitioner has "fairly presented" his "changing theory of the prosecution" claim, except on the foregoing, procedurally-defaulted theories, "to an appropriate state court." *Turner*, 262 F.3d at 123.

Further, any remaining formulation of the claim would have no basis in the record and be plainly meritless. Upon a review of the prosecution's opening and summation, the court concludes that the prosecution's theory of the case did not materially change as alleged in the petition. (*Compare* Opening, ECF No. 23-1, ECF pp. 45-57 at 257:8-269:10 *with* Summation, ECF No. 23-4, ECF p. 190 and ECF No. 23-5, ECF pp. 1-34, at 897:16-931:23.) Additionally, petitioner does not allege that witness testimony contradicted or materially diverged from the indictment or bill of particulars, or contradicted or diverged from the prosecution's opening or summation. Even if there are discrepancies, "[t]he prosecution is permitted significant flexibility in proof, where, as here, the defendant had 'fair

notice of the accusations against him.'" *LanFranco v. Murray*, 313 F.3d 112, 120 (2d Cir. 2002) (quoting *People v. Grega*, 531 N.E.2d 279, 282 (N.Y. 1988)). The prosecution's contention throughout petitioner's trial was that petitioner stabbed the victim to death, and nothing in the record suggests that the prosecution ever wavered from that contention, or introduced contrary evidence.[5]

The court concludes that none of the foregoing purported issues that petitioner raises indicate the existence of any state court decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, to the extent petitioner's "changing theory of the prosecution" claims are unexhausted, they are in any event meritless.

For the foregoing reasons, the court denies petitioner's claim for federal habeas corpus relief based on his "changing theory of the prosecution" claim.

---

[5]     Petitioner's "Claim II" also asserts that the indictment was defective because it failed to set forth the specific subdivision of section 125.25 of the New York Penal Law, which governs second-degree murder, that plaintiff allegedly violated. (Repl. at 6.) This claim was not raised on direct appeal (Pet. App. Br., ECF No. 23-6, ECF pp. 1-48, at ii-iv (setting forth questions presented on direct appeal)), and petitioner raised it for the first time before this court in his reply. Therefore, the court need not consider this claim, which is, in any event, unexhausted. *See Silvestre*, No. 15-CV-9425(KPF)(DCF), 2018 WL 3611988, at *31 n.27 ("[A] habeas petitioner may not raise a federal claim for the first time on reply." (citations omitted)).

## III.  Ineffective Assistance of Counsel Claim (Claim III)

Petitioner asserts that he received ineffective assistance of trial counsel because his trial counsel "did no prior investigation," failed to investigate certain unidentified "unexplained evidence," and failed to investigate certain unidentified "medical professionals who w[ere] present and collected evidence[,] and who wrote medical reports that would have sh[own] the petitioner was actually innocent of the crime." (Pet. at 5, 8.)

### A. Legal Standard

Under the Sixth Amendment, a criminal defendant is afforded "the right . . . to have the Assistance of Counsel for his Defense."  U.S. Const. amend. VI.  This right does not guarantee a defendant "perfect counsel," but rather, "effective assistance of counsel."  *Constant v. Martuscello,* 119 F. Supp. 3d 87, 142 (E.D.N.Y. 2015) (citations and internal quotation marks omitted).

To establish a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 688, 691 (1984). A petitioner must show that: (1) counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

22

proceedings would be different. *Id.* at 688, 694. The two prongs may be addressed in either order, and, moreover, the court is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

"Reasonableness" under the performance prong is measured by "prevailing professional norms." *Id.* at 688. Generally, "there is a strong presumption that counsel's actions 'might be considered sound trial strategy.'" *Stultz*, 2013 WL 937830, at *7 (quoting *Strickland*, 466 U.S. at 688-89). The court presumes counsel acted reasonably where "counsel is prepared and familiar with the relevant facts and legal principles." *Brown v. Phillips*, No. 03-cv-0361 (DGT), 2006 WL 656973, at *8 (E.D.N.Y. Mar. 12, 2006). Under the prejudice prong, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," *id.* at 695, and the petitioner must "affirmatively prove prejudice arising from counsel's allegedly deficient representation," *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citations and internal quotation marks omitted).

"[T]he standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86,

105 (2011).  Due to the heightened deference under AEDPA, "[a]

federal court reviewing a state court's determination regarding

ineffective assistance of counsel has been characterized as

'doubly' deferential by the Supreme Court." *Constant*, 119 F.

Supp. 3d at 143 (quoting *Harrington*, 562 U.S. at 105).  Thus,

"[w]hen § 2254(d) applies, the question is not whether counsel's

actions were reasonable" but rather "whether there is any

reasonable argument that counsel satisfied *Strickland*'s

deferential standard."  *Harrington*, 562 U.S. at 105.

  B. Application

          Petitioner's ineffective assistance of counsel claim

rests on his assertions that trial counsel "did no prior

investigation," failed to investigate certain unidentified

"unexplained evidence," and failed to investigate certain

unidentified "medical professionals who w[ere] present and

collected evidence[,] and who wrote medical reports that would

have sh[own] the petitioner was actually innocent of the crime."

(Pet. at 5, 8 (language repeated).)  These claims are "non-

record based" claims, as they are based on matters outside the

pretrial and trial record, and the court concludes that they are

unexhausted and meritless.

          "To properly exhaust an ineffective assistance of

trial counsel claim that relies on evidence outside the pretrial

and trial record . . . the petitioner must raise it as part of a

motion to vacate judgment under [section] 440.10 [of the New York Criminal Procedure Law] and then seek leave to appeal to the Appellate Division." *Griffin v. Suffolk County*, No. 13-CV-4375(JFB), 2013 WL 6579839, at *3 (E.D.N.Y. Dec. 16, 2013) (citing *Anthoulis v. New York*, No. 11-CV-1908(BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012)). Section 440.10 does not have a statute of limitations. *Id.* (citation omitted); *see also* CPL § 440.10(1) (providing that a defendant may bring a motion to vacate an entry of judgment "[a]t any time after the entry of a judgment").

Here, although petitioner has pursued a section 440.10 proceeding in which he raised an ineffective assistance of trial counsel claim, he asserted a different basis for claiming ineffective assistance of trial counsel. Specifically, in his section 440.10 motion, petitioner asserted that his trial counsel was ineffective because counsel failed to object to the prosecution's purportedly improper addition of a witness to its witness list, and because counsel had an unidentified conflict of interest such that counsel's "loyalty was divided between the prosecutor and [petitioner]." (Section 440 Motion Aff. at 25-29.)

Thus, even construing all of petitioner's papers liberally, the basis for plaintiff's ineffective assistance of trial counsel claim in his section 440 motion is wholly

unrelated to the basis for his ineffective assistance of trial

counsel claim in the instant habeas corpus petition.

Accordingly, petitioner's non-record based claims asserted in

the instant habeas corpus petition are unexhausted. *Carpenter*

*v. Unger*, Nos. 10-CV-1240, 12-CV-957(GTS)(TWD), 2014 WL 4105398,

at *25 (N.D.N.Y. Aug. 20, 2014) (finding the petitioner's

ineffective assistance of counsel claims unexhausted because

they were non-record based and the petitioner did not raise them

in a Section 440.10 motion); *Anthoulis*, 2012 WL 194978, at *4-5

(same).

　　　　Although unexhausted claims may require dismissal of

the entire petition or a stay of the petitioner, neither of

those resolutions is appropriate here because petitioner's

unexhausted ineffective assistance of counsel claims are

meritless. *Strickland* requires a petitioner to satisfy both a

performance prong *and* a prejudice prong in order to prevail on

an ineffective assistance of counsel claim. *Strickland*, 466

U.S. at 684, 698. Petitioner's claim that defense counsel

failed to investigate satisfies neither.

　　　　As a general matter, "[a]ctions or omissions by

counsel that might be considered sound trial strategy do not

constitute ineffective assistance." *McKee v. United States*, 167

F.3d 103, 106 (2d Cir. 1991) (citations and internal quotation

marks omitted). A counsel's "failure to call a witness for

tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). This holds true even where an interview might have yielded exculpatory information. *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation[.]" (citation and internal quotation marks omitted)). Here, although defense counsel has not submitted a statement explaining his decisions whether or not to undertake certain investigation, it is clear that petitioner's claims regarding those decisions are insufficient.

Petitioner asserts that counsel "did no prior investigation," failed to investigate certain unidentified "unexplained evidence," and failed to investigate certain unidentified "medical professionals who w[ere] present and collected evidence[,] and who wrote medical reports that would have sh[own] the petitioner was actually innocent of the crime." (Pet. at 5, 8 (language repeated).) Petitioner does not explain, however, what he contends counsel's "prior investigation" should have consisted of, or why, but for counsel's failure to conduct this investigation, the outcome of petitioner's criminal trial would have been different. Instead,

he relies on a conclusory and speculative assertions that
"[c]ounsel made no effort to prepare and investigate this case
enough to prepare a defense, as opposed to proceeding to trial
and relying on the prosecution to provide information on a
whim," and "never investigated" unidentified "possible
mitigating factors."  (Repl. at 4.)

Further, petitioner does not identify the "unexplained
evidence" that counsel purportedly failed to investigate with
any specificity.  Nor does petitioner provide any basis for his
contention that investigation of medical personnel would have
uncovered exculpatory evidence.[6]  Thus, petitioner fails to
establish any prejudice stemming from defense counsel's alleged
failure to investigate.  Moreover, to the extent counsel did not
undertake certain pre-trial investigation, investigate
"unexplained evidence," or investigate medical personnel for
strategic reasons, the court finds that deficient performance by
counsel is not established.  For example, counsel could have
concluded that investigation of this evidence and these

---

[6]     Petitioner asserts that the medical personnel prepared reports that would have
shown he was "actually innocent" (Pet. at 5, 8), however a claim of actual innocence
"is not itself a constitutional claim, but instead a gateway through which a habeas
petitioner must pass to have his otherwise barred constitutional claim considered on
the merits."  *Johnson v. Bellnier*, 508 F. App'x 23, 26 (2d Cir. 2013) (quoting *Herrera
v. Collins*, 506 U.S. 390, 404 (1993)).  In any event, as explained in this Memorandum
and Order, petitioner has failed to explain how investigation of medical personnel and
their reports would yield any exculpatory evidence, much less show his actual
innocence.  For the same reason, to the extent petitioner's allegation that certain
medical personnel prepared exculpatory reports can be construed as a claim for relief
under *Brady v. Maryland*, 373 U.S. 83 (1963), that unexhausted claim must also be
denied as plainly meritless.

individuals was unlikely to yield helpful information, and that trial preparation efforts would be better focused on pursuing more promising lines of inquiry.

In sum, there is no indication that additional pre-trial investigation, investigation of certain unidentified "unexplained evidence," or investigation of medical personnel would uncover any relevant, let alone exculpatory, evidence or change to result of petitioner's trial. *See Davis v. Walsh*, No. 08-CV-4659(PKC), 2015 WL 1809048, at *11 (E.D.N.Y. Apr. 21, 2015) (denying ineffective assistance claim where counsel did not interview a witness and there was no basis for finding that an interview would have yielded exculpatory evidence). Therefore, petitioner's ineffective assistance of counsel claim regarding trial counsel's purported failures to investigate is meritless.[7]

For the above stated reasons, the court denies petitioner's claim of ineffective assistance of counsel as set forth in the instant habeas corpus petition.

---

[7] Although not mentioned, in form or substance, in the habeas corpus petition before the court, petitioner's reply brief asserts, in a conclusory and unsupported manner, that trial counsel failed to make various objections to evidence introduced, and comments made, by the prosecution at trial. (See Repl. at 8-9.) The court need not consider these claims, however, as "a habeas petitioner may not raise a federal claim for the first time on reply." *Silvestre v. Capra*, No. 15-CV-9425(KPF)(DCF), 2018 WL 3611988, at *31 n.27 (S.D.N.Y. July 27, 2018) (citing, in relevant part, Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts).

## IV.  *Antommarchi* Claim (Claim IV)

Petitioner claims a violation of his statutory and constitutional rights to be present at all material stages of the proceedings, particularly sidebars, as set forth in the decision of the New York Court of Appeals in *People v. Antommarchi*, 604 N.E.2d 95 (N.Y. 1992).  (Pet. at 5-6, 8-9.) The court rejects petitioner's *Antommarchi* claim because it is procedurally barred and, in any event, meritless.

### A. Legal Standard

*Antommarchi* is a decision of the New York Court of Appeals, not the Supreme Court of the United States, and "[s]ubsequent decisions of the New York Court of Appeals make clear that the *Antommarchi* rule is not a result of federal constitutional or statutory mandate, but rather, is grounded in New York Criminal Procedure Law § 260.20."  *Diaz v. Herbert*, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004) (citations omitted); *accord People v. Maher*, 675 N.E.2d 833, 835-36 (N.Y. 1996) ("[A] defendant's right to be present at a sidebar conference with a prospective juror exploring possible general or specific bias is governed exclusively by New York statutory law." (quoting *People v. Roman*, 665 N.E.2d 1050, 1054 (N.Y. 1996)).

As numerous district courts in the Second Circuit have observed, *Antommarchi* rights are not cognizable on federal habeas corpus review, as federal habeas corpus courts may only

consider rights enumerated by federal law, as determined by the
Supreme Court of the United States. *See, e.g., Diaz,* 317 F.
Supp. 2d at 473 ("[E]ven if [petitioner's] rights under
*Antommarchi* were violated, it does not rise to the level of a
federal constitutional violation. Therefore, any alleged
violation of these rights is not cognizable on habeas review.");
*Perez v. Greiner,* 00-CV-5504, 2005 WL 613183(RCC)(KNF), at *5
(S.D.N.Y. Mar. 14, 2005) ("[T]here is no clear Supreme Court
precedent supporting a claim that absence from a sidebar
conference during voir dire violates the Sixth Amendment.
Therefore, the Appellate Division's adjudication of this claim
is not contrary to, or an unreasonable application of, that
law." (citation omitted)). Consequently, the court analyzes
petitioner's *Antommarchi* claim under federal standards
applicable to a criminal defendant's right to be present at
proceedings, not under the New York Court of Appeals's
*Antommarchi* decision.

Under federal law, "[g]enerally, a criminal defendant
has a right to be present at all material stages of his trial
under the Confrontation Clause of the Sixth Amendment and Due
Process Clause of the Fifth and Fourteenth Amendments." *Diaz*,
317 F. Supp. 2d at 473 (citing *United States v. Gagnon*, 470 U.S.
522, 526)). This right, however, "is not absolute," and
"applies only to the extent that a fair and just hearing would

be thwarted by the defendant's absence." *Id.* at 473-74 (citing *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934) and quoting *United States v. Ferrarini*, 219 F.3d 145, 152 (2d Cir. 2000)); *see also Gaiter v. Lord*, 917 F. Supp. 145, 152 (E.D.N.Y. 1996) ("[Petitioner's] presence was not required at the alleged sidebar discussions because her absence would not have had 'a substantial effect on [her] ability to defend.'" (quoting *Snyder*, 291 U.S. at 108)); *see also Nichols v. Kelly*, 923 F. Supp. 420, 426 (W.D.N.Y. 1996) ("Federal standards regarding a defendant's presence at a side bar[] are less stringent than New York's standards.").

B. Application

Petitioner's *Antommarchi* claim is procedurally barred. In denying petitioner's section 440 motion, the New York Supreme Court concluded that petitioner's *Antommarchi* claim, in a list of claims, was "mandatorily barred" because petitioner failed to raise it on his direct appeal, and failed to provide a reason for his failure to raise it. (*See* Section 440 Motion Denial, ECF No. 23-7, ECF pp. 144-53, at 6; *see also* Pet. App. Br., ECF No. 23-6, ECF pp. 1-48, at ii-iv (setting forth questions presented on direct appeal and not including *Antommarchi* claim).) Thus, petitioner's *Antommarchi* claim is procedurally defaulted for purposes of federal habeas corpus review. Further, petitioner does not attempt to establish, much less

actually establish, cause or prejudice with respect to his procedurally-defaulted *Antommarchi* claim.

Moreover, even if petitioner's *Antommarchi* claim were not procedurally defaulted, petitioner does not present a meritorious claim, analyzed under federal, and not New York State, standards. Instead, the record reveals no deprivation of petitioner's federal rights relating to his presence at sidebar discussions.

During jury selection, the trial court noted that it would conduct jury selection "in the full presence of [petitioner]" (Jury Selection Tr., ECF No. 23, ECF p. 11, at 11:1-11), and the record indicates that only one sidebar took place during jury selection, including during voir dire and juror challenges. (*See generally* Jury Selection, Voir Dire, and Challenges Trs., ECF No. 23, ECF pp. 9-212 and ECF No. 23-1, ECF pp. 1-19.) That sidebar related to a prospective juror who indicated that she worked for the New York City Department of Health and knew one of the medical examiners who had been involved in the case. (Jury Selection Tr. at 26:23-29:24.) That prospective juror was later questioned by both the court and defense counsel in petitioner's presence (Challenges Tr. 85:1-87:15), and was ultimately excused as a result of a peremptory challenge by the prosecution. (Challenges Tr. at 88:7-11.)

At trial, there were a number of sidebars, but the subject matter of these sidebars was limited to legal issues, such as evidentiary objections, and clarification of the trial record. (*See, e.g.*, Trial Tr. ECF No. 23-1, ECF pp. 67-68, at 279:15-280:23 (discussion of defense objection to admission of photograph of victim); Trial Tr., ECF No. 23-1, ECF pp. 135-38, at 347:20-350:9 (discussion of defense objection to purported effort by prosecution to elicit hearsay testimony); Trial Tr. ECF No. 23-2, ECF pp. 15-16, at 427:18-428:13 (discussion of photograph of area of crime scene prosecution sought to introduce); Trial Tr., ECF No. 23-2, ECF pp. 38-39, at 450:12-451:15 (clarifying whether witness said "shiv" or "shit" during testimony); Trial Tr., ECF No. 23-3, ECF pp. 72-73, at 572:20-573:25 (discussing appropriate scope of re-direct examination); Trial Tr., ECF No. 23-3, ECF pp. 145-54, at 645:10-654:12 (discussing potential hearsay issues in witness testimony, followed by hearing regarding proffered testimony outside the presence of the jury at which the court excluded the testimony).)

Although petitioner asserts that "he had material information" that could have been relevant at sidebar discussions (Pet. at 6, 9), he does not identify the nature of this information. Nor does petitioner explain the relevance of the unidentified information, or any basis for his implicit

34

contention that his attorney did not possess this information.
Presented only with petitioner's conclusory and unsupported
assertion that he possessed material information, and having
reviewed the trial transcript, the court finds no indication
that petitioner's absence at any sidebar "had 'a substantial
effect on [his] ability to defend.'" *Gaiter*, 917 F. Supp. at
152 (quoting *Snyder*, 291 U.S. at 108). "Thus, [petitioner's]
alleged absence from sidebar discussions – without more – raises
no federal claim." *Id.*[8]

For the foregoing reasons, petitioner's *Antommarchi*
claim is denied as procedurally barred and meritless.

## V.   Improper Prosecutorial Statements Claim (Claim V)

Petitioner alleges that the prosecution violated "the
Victim/Advocate witness rule in violation of the Judiciary Law
and the ABA conduct of Attorneys and or officers of the court
(sic)," because "[t]he prosecution knew witnesses had lied, but
vouched for their credibility" in violation of petitioner's
Fourteenth Amendment rights. (Pet. at 6, 9.)[9]  Petitioner also

---

[8]     Moreover, the court need not address petitioner's waiver of his state law
rights under *Antommarchi*, as they are not relevant to his federal constitutional
rights.
[9]     Petitioner provides no basis for his conclusory assertion that the prosecution
"knew witnesses lied," or that witnesses had, in fact, lied.  Moreover, the New York
Supreme Court concluded in denying petitioner's section 440 motion, "[t]his
speculative and unfounded assertion is . . . clearly discern[i]ble from the record and
was never raised on appeal," and was therefore procedurally barred under New York law.
(See Section 440 Motion Denial, ECF No. 23-7, ECF pp. 144-53, at 6-7 and 7 n.7.)
Consequently, this meritless claim is also procedurally defaulted on federal habeas
corpus review.  Additionally, the advocate-witness rule, also known as the "lawyer-
witness rule," is relevant in situations where "there is a question as to whether an
attorney will be called as a witness on behalf of his or her client." *Shabbir v.
Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005).  Here, there is no

asserts, in Claim II, that the prosecution argued that "the jury should infer that the witnesses had nothing to gain and petitioner did," and that petitioner "did the crime no matter what the evidence said." (Pet. at 5, 7.)  The court must construe *pro se* petitioner's submissions broadly, and so construed, the foregoing allegations from Claim II could raise a federal habeas corpus claim based on improper prosecutorial statements.  Thus, the court analyzes the foregoing allegations raised in Claim II together with Claim V.

A. <u>Legal Standard</u>

Petitioner's claims regarding improper prosecutorial statements implicate due process principles.  For a defendant to be denied a fair trial as a result of improper prosecutorial commentary, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A habeas petitioner seeking relief based on purportedly improper prosecutorial comments bears "a heavy burden, because the misconduct alleged must be . . . severe and significant[.]" *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993); *see also United States v. Truman*, 581 F. App'x 26, 29 (2d Cir. 2014)

---

indication that any attorney would be called as a witness in petitioner's criminal prosecution, and the lawyer-witness rule is irrelevant.  Accordingly, the court does not consider further the branches of Claim V relating to purported subornation of perjury and violation of the lawyer-witness rule.

("In evaluating whether allegedly improper comments by the prosecutor are grounds for reversal, the fundamental question is whether, if there was misconduct, it caused substantial prejudice to the defendant, thereby depriving him of his right to a fair trial." (quoting *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991))).  Further, it is "not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Darden*, 477 U.S. at 181 (internal quotation marks and citation omitted).

B. Application

Depending on how the portions of petitioner's Claim II and Claim V alleging improper prosecutorial statements are construed, they are either procedurally barred or unexhausted, and in any event are plainly meritless.

To the extent petitioner seeks habeas corpus relief based on his contention in Claim II that the prosecution argued that "the jury should infer that the witnesses had nothing to gain and petitioner did," and that petitioner "did the crime no matter what the evidence said," (Pet. at 5, 7), his claim is unexhausted.  There is no indication that petitioner has raised any claim based on these purported statements before the trial court.

Moreover, petitioner's contention that the prosecution argued that "the jury should infer that the witnesses had

nothing to gain and petitioner did," and that petitioner "did
the crime no matter what the evidence said," (*id.*) is without
any factual basis in the record.  A review of the trial
transcript indicates that, in its summation, the prosecution
suggested that the jury should consider the witnesses' motives.
(Summation 919:6-924:11.)  The prosecution's summation also
addressed inconsistencies in trial testimony.  (*See* Summation,
ECF No. 23-4, ECF p. 190 and ECF No. 23-5, ECF pp. 1-34, at
899:1-4, 903:18-910:6, 930:1-931:23.)  Nothing in the
prosecution's statements at trial, however, can fairly be
characterized as a statement that "the jury should infer that
the witnesses had nothing to gain and petitioner did," or that
petitioner "did the crime no matter what the evidence said."
(Pet. at 5, 7.)

Additionally, petitioner's claim that the prosecutor
improperly vouched for witnesses, raised in Claim V of the
instant petition, is procedurally barred and meritless.  In his
direct appeal, petitioner argued that the prosecutor improperly
vouched for Kassine Harrington and Erika Renjifo, witnesses in
petitioner's criminal trial, in his summation.  (Pet. App. Br.,
ECF No. 23-6, ECF pp. 1-48, at 21, 26-27.)  The Appellate
Division concluded that these claims were unpreserved for
appellate review based on New York State law.  *See Morrison*, 873
N.Y.S.2d at 160 ("The defendant's claims that he was denied a

fair trial because the prosecutor made improper remarks during his opening statement and summation are unpreserved for appellate review, except his claim that the prosecutor shifted the burden of proof during summation."). Thus, petitioner's claim that the prosecution improperly vouched for witnesses' credibility is procedurally barred to the extent it is based on the prosecutor's purported vouching for Harrington and Renjifo in summation.[10]

To the extent petitioner asserts that the prosecution improperly vouched for a different witness, petitioner's claim is unexhausted, as there is no indication that petitioner has raised such a claim before any state court. The claim is also plainly meritless: as the court has explained, a thorough review of the prosecution's summation indicates that the prosecution addressed inconsistencies in testimony, and at most, suggested that the jury should consider the witnesses' motives. (*See* Summation, ECF No. 23-4, ECF p. 190 and ECF No. 23-5, ECF pp. 1-34, at 899:1-4, 903:18-910:6, 919:6-924:11, 930:1-931:23.) The prosecution did not, however, vouch for any witness in form or in substance. Therefore, petitioner's vouching claim is without any factual basis in the record.

---

[10]    Somewhat confusingly, petitioner also asserted in his direct appeal that the prosecution impermissibly vouched for the victim. (*See* Pet. App. Br. at 12.) It is not clear how the prosecution would have "vouched" for the credibility of the deceased victim, who did not testify, but in any event, any claim that the prosecution impermissibly vouched for the victim's credibility in its opening is also procedurally defaulted.

In addition to the improper vouching claim set forth in his petition, in his reply, petitioner asserts that the prosecution made a number of purportedly improper statements. According to petitioner, the prosecution impermissibly made inflammatory comments during opening and summation, personally attacked and disrespected defense counsel, repeatedly commented on inadmissible evidence, made biblical references, and misled the jury. (Repl. at 8-9, 12-13.) With the exception of his identification of a statement involving a biblical reference, petitioner does not identify the specific statements that he contends were improper. (*See id.*) These claims are not properly before the court because they were not included in the petition. *See Silvestre*, No. 15-CV-9425(KPF)(DCF), 2018 WL 3611988, at *31 n.27 ("[A] habeas petitioner may not raise a federal claim for the first time on reply." (citations omitted)).

Further, certain claims relating to purportedly improper prosecutorial comments that petitioner seeks to raise for the first time in his reply are procedurally barred. Specifically, in his direct appeal, petitioner raised claims regarding inflammatory comments during opening and summation, use of inadmissible evidence in opening and summation, attacks on defense counsel in summation, references to various facts not in evidence during opening and summation, and biblical

references.  (Pet. App. Br. at 4-9, 10-12, 16-21, 24-30.)  The

Appellate Division concluded that the foregoing claims were all

procedurally defaulted based on New York State law.  *See*

*Morrison*, 873 N.Y.S.2d at 160.  Accordingly, even if petitioner

had included the foregoing claims in his petition, the court

would be unable to review them absent a showing of cause and

prejudice, which petitioner has not made.

Additionally, to the extent petitioner seeks to raise

claims relating to improper prosecutorial statements that are

not procedurally barred, the claims are unexhausted because they

have not been presented to any New York court.  Moreover,

whether or not procedurally barred or unexhausted, petitioner's

claims relating to improper prosecutorial comments are plainly

meritless.  Upon a review of the trial transcript, the court can

find no commentary by the prosecution that would come even

arguably close to "so infect[ing] the trial with unfairness as

to make the resulting conviction a denial of due process."

*Darden* 477 U.S. at 181.  Nor can the court locate any decision

of any state court relating to prosecutorial comment that was

contrary to, or involved the unreasonable application of,

federal constitutional law as determined by the Supreme Court of

the United States.

The only potentially debatable comment is the

prosecution's reference to the biblical story of the Judgment of

Solomon.  (Summation Tr., ECF No. 23-5, ECF pp. 33-34, at 930:18-931:23.)  Further, in context, the reference is most appropriately characterized as the prosecution's use of a common[11] rhetorical device as part of a broader exhortation to the jury to use their common sense, as King Solomon did in the biblical story.  (*See id.*)  An appeal to the jury to use common sense in weighing the evidence does not "infect the trial with unfairness," *Darden*, 477 U.S. at 181, and therefore, petitioner's claim based on the prosecutor's reference to the Judgment of Solomon is meritless.

For the foregoing reasons, the court concludes that all of petitioner's claims arising from allegedly improper prosecutorial statements are procedurally barred or unexhausted, and in any event, meritless.

## VI.  Burden Shifting and Prejudicial Photographs

Finally, in his reply, petitioner asserts that the prosecution's commentary impermissibly shifted the burden of proof onto the defense, and that the prosecution knowingly

---

[11]    *See*, *e.g.*, *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 167 (1975) (Burger, J., dissenting) ("In *Fortnightly Corp. v. United Artists*, 392 U.S. 390, 402 (1968), Mr. Justice Fortas observed that cases such as this call 'not for the judgment of Solomon but for the dexterity of Houdini.'"); *United States v. Davis*, 648 F.3d 84, 86 (2d Cir. 2011) ("Unlike in the Judgment of Solomon, *see* 1 Kings 3:16–28, neither party has blinked, and we are therefore in the unenviable position of determining who gets the artwork, and who will be left with nothing despite a plausible claim of being unfairly required to bear the loss."); *Broca v. Giron*, No. 11-CV-5818(SJ)(JMA), 2013 WL 867276, at *9 (E.D.N.Y. Mar. 7, 2013) ("The allegory of the Judgment of Solomon is one that comes to mind, and this Court thinks it wiser, and more congruent with the aim of this affirmative defense, to avoid 'cutting the baby in half.' 1 Kings 3:16–28[.]  Therefore, the Court is disinclined to further fracture the family unit."), *aff'd*, 530 F. App'x 46 (2d Cir. 2013).

submitted pictures of the victim smiling and in other poses to prejudice the jury against petitioner. (Repl. at 8-9, 12-13.) "[A] habeas petitioner may not raise a federal claim for the first time on reply." *Silvestre*, No. 15-CV-9425(KPF)(DCF), 2018 WL 3611988, at *31 n.27 (citations omitted)). Thus, these claims are not properly before the court. As explained below, both claims are also meritless.

A. Burden Shifting

Upon reviewing the trial transcript, the court is not convinced that the statements to which defense counsel objected as seeking to shift the burden actually sought to shift the burden of proof onto defendant. Instead, in the challenged statements, the prosecution essentially characterized statements made by defense counsel, and commented on those statements in light of the trial testimony. (*See* Summation Tr., ECF No. 23-5, ECF pp. 1-27, at 899:1-903:17; 922:9-924:14.) Nowhere in the statements did the prosecution refer, in form or in substance, to the concept of the burden of proof. (*See id.*)

Moreover, to the extent that the prosecution's statements could be construed as suggesting that the defense had the burden of proof, both before and after the challenged statements, the prosecution and the court expressly reminded the jury that the burden of proof was with the prosecution. (*See id.*) Further, the court's jury charge exhaustively explained to

the jury that the petitioner was presumed innocent, the burden
to prove his guilt was with the prosecution, the defense did not
have to prove anything, and "the burden of proof never shifts
from the People to the defendant." (*See* Jury Charge Tr., ECF
No. 23-5, ECF pp. 36- , at 933:20-934:20, 935:14-938:2.)

Thus, taking into account the substance of the
challenged statements, together with the context in which they
were made, the court concludes that petitioner cannot
sufficiently show any misconduct with respect to burden
shifting, and that in any event, sufficient curative measures
were taken. *See Locascio,* 6 F.3d at 945–46 (noting that a
court's inquiry into purportedly inappropriate prosecutorial
comments must be guided by "(1) the severity of the alleged
misconduct; (2) the curative measures taken; and (3) the
likelihood of conviction absent any misconduct."). Based on the
foregoing factors, petitioner's claim of purported improper
burden shifting is meritless.

B. Prejudicial Photographs

Petitioner's claim based on the introduction of
photographs of the victim taken prior to his death is also
meritless. The photographs of the victim admitted into evidence
at petitioner's trial consisted of a photograph of the victim
taken while he was alive, and photographs of the victim's
injuries taken in connection with his autopsy. (*See* Index of

Exhibits, ECF No. 23-5, ECF pp. 79-81; *see also* Trial Tr., ECF
No. 23-1, ECF pp. 66-68, at 278:12-280:24 (introduction of
photograph of victim smiling); Trial Tr. ECF No. 23-4, ECF pp.
86-90, 107-09, at 793:25-797:14, 814:4-816:3 (introduction of
autopsy photographs).)  Construing petitioner's reply broadly,
he seeks habeas corpus relief based on both categories of
photographs.[12]

"It is well-settled that '[e]rroneous evidentiary
rulings do not automatically rise to the level of constitutional
error sufficient to warrant issuance of a writ of habeas
corpus.'"  *Rivera v. Graham*, No. 11-CV-3546(BMC), 2012 WL
397826, at *5 (E.D.N.Y. Feb. 7, 2012) (quoting *Taylor v. Curry*,
708 F.2d 886, 891 (2d Cir. 1983)).  Instead, "[f]or a habeas
petitioner to prevail in connection with a claim regarding an
evidentiary error, a petitioner must 'show that the error
deprived [him] of a fundamentally fair trial.'"  *Id.* (quoting
*Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004)).  Further,
"[w]here [purportedly] prejudicial evidence is 'probative of an

---

[12]    Petitioner raised the trial court's admission of the photograph of plaintiff
smiling on direct appeal, (*see* Pet. App. Br., ECF No. 23-6, ECF pp. 21, at 12), but
the Appellate Division did not expressly address it, and it therefore falls in the
category of claims the Appellate Division concluded were "without merit or do not
require reversal." *Morrison*, 873 N.Y.S.2d at 160.  Petitioner also raised the
admission of the photograph of the victim smiling in his application for leave to
appeal to the New York Court of Appeals (*see* Application for Leave to Appeal, ECF No.
23-6, ECF pp. 130-31, at 2), which was denied without explanation.  (*See* Certificate
Denying Leave, ECF. No. 23-7, ECF p. 3.)  Thus, petitioner's claim based on the
smiling photograph of the victim was preserved for habeas review, although petitioner
did not raise it in his petition.  Petitioner's claim regarding the admission of
photographs is unexhausted to the extent petitioner relies on other photographs, and
in any event, regardless of the photographs on which petitioner relies, the claim is
without merit as explained herein.

essential element' in the case, its admission does not violate the defendant's right to due process." *McCullough v. Filion*, 378 F. Supp. 2d 241, 254-55 (W.D.N.Y. 2005) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)).

Here, the trial court noted that the photograph of the victim smiling was "full faced" and depicted the victim "from the waist up," thus "show[ing] his apparent build," and concluded that it was therefore "probative," as there was some indication that "justification may be a likely issue here." (Trial Tr., ECF No. 23-1, ECF p. 68, at 280:9-17.) Notably, in defense counsel's opening, counsel asserted that the victim initiated the physical altercation between himself and petitioner, and that petitioner's intent in using a knife against the victim was "to stop the [victim] from beating him up." (*See* Opening Tr., ECF No. 23-1, ECF pp. 58-60, at 270:12-272:4.) Similarly, in admitting the autopsy photographs, the court noted that "[t]he People are under an obligation to prove beyond a reasonable doubt, among other things, the cause of death and defendant's mental culpability," and found "that there is a potential value to the trier of fact[] [in] showing the wound in greater detail." (Trial Tr. ECF No. 23-4, ECF pp. 86-90, at 793:25-797:14.)

As the trial court observed correctly, it was the prosecution's burden to prove intent beyond a reasonable doubt,

and the defense's theory of the case raised questions of justification.  In view of the foregoing, the trial court's conclusion that the photographs, which depicted the victim's build and the fatal injuries he sustained, had probative value that outweighed their potential prejudicial effect and their admission was not contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Court of the United States.

Accordingly, petitioner is not entitled to habeas corpus relief based on his claims relating to prosecutorial burden-shifting and introduction of purportedly prejudicial photographs, which are in any event not properly presented for habeas corpus review.

**CONCLUSION**

For the foregoing reasons, the habeas corpus petition is denied in its entirety.  Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will be issued.  28 U.S.C. § 2253(c); *see Slack v. McDaniel*, 529 U.S. 473 (2005).  Pursuant to 28 U.S.C. § 1915(a)(3), the court certifies that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment, serve

a copy of this Memorandum and Order and the judgment on *pro se* petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated: January 18, 2019
       Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York
